FRANCIS C. GANNON *v.* LYDIA S. GANNON.

MALTBIE, C. J., BROWN, JENNINGS, ELLS and DICKENSON, Js.

Argued November 2—decided December 15, 1943.

*Joseph N. Manfreda,* for the appellant (defendant).

*A. E. Howard, Jr.,* with whom was *Robert P. Billings,* for the appellee (plaintiff).

ELLS, J. The elements of a cause of action on the ground of desertion are (1) cessation from cohabitation; (2) an intention on the part of the absenting party not to resume it; (3) the absence of the other party's consent; and (4) absence of justification. *McCurry* v. *McCurry,* 126 Conn. 175, 178, 10 Atl. (2d) 365. The defendant wife, appealing from a judgment of divorce granted to the plaintiff on this ground, claims that he failed to prove elements three and four; and that, if he did prove wilful desertion, it appeared that he had legally deserted her, and his desertion would preclude him from obtaining a divorce.

We can make no material corrections in the finding of the trial court. The parties were married at Wallingford in 1923 and lived there in a house owned by the husband's parents. The plaintiff was a painter and was subject to seasonal layoffs. He supported his wife to the best of his ability, but such support was not adequate. She had to go to work, and during her employment her health became impaired. Arguments ensued; in September, 1931, she was ill, nervous and underweight, and her husband was out of work. She went to her parents' home in Georgia, stating that she was putting him on probation for one year and that if he showed her during that year that he would be a man, get a job, furnish her with a home and support her she would come back to him. She was justified in leaving, because of his conduct and treatment of her, and this justification continued down to the time of the bringing of this action. While she was in Georgia and down to the time of the commencement of the action, he made no request to her to return. He did not support her, make any contribution toward her

support or offer to support her. He wrote but one letter, in which he stated that his folks were going to store the furniture and take the apartment because of unpaid rent. She returned to Wallingford almost immediately and was told to do what she wanted with the furniture, as the parents wanted the apartment. She paid various household bills as well as some bills personally contracted by her husband. The plaintiff was still out of work. They agreed to move to Georgia, with the understanding that he would seek employment there. Subsequently, she changed her mind and told him she was leaving and would never come back. She left Wallingford and has never returned to him. She has visited in Wallingford three times since but did not make any effort to communicate with him. On one of these visits she made the statement that she never wanted to see any of the Gannons again. From the time of leaving her husband the defendant has never had any intention of returning to live with him as his wife. In 1942 the plaintiff inherited a considerable estate and immediately brought this divorce action.

Upon the basis of these subordinate facts the court concluded that after the defendant left the plaintiff and had made her home in Georgia she decided to remain away from the plaintiff and never to return to him. As we interpret the finding, the trial court concluded that, after the defendant went to Georgia in 1931 and made her home there, she decided never to return to her husband, and, while she did agree when she came back to Wallingford in 1932 that they would go to Georgia together, she refused to carry out that plan and reverted to her decision not to return to him. There is no finding as to why she broke the agreement. She did not say, for example, that she had become satisfied that her husband would not carry out

his engagement to seek employment in Georgia. This fact, among others contained in the finding, led the court to conclude that after she left in 1931 she formed the intention of leaving for good.

The defendant contends, however, that, as the court found that she was justified in leaving and that the justification continued down to the time of the bringing of the action, the plaintiff is not entitled to a divorce on the ground of desertion. The subordinate facts found as to his treatment of her, ill and nervous as she was, hardly amount to more than lack of support by a man who was willing to support her but was unable to do so because of his poor ability. It was expressly found that during the period of their married life he supported her to the best of his ability; that he was a painter, subject to seasonal layoffs; and that he tried to find other work, and was actually employed for about a year in operating a gasoline station and for a considerable period as a chauffeur. Such was the situation up to the time she went to Georgia in 1931. It is true that during her residence there he did not ask her to return, nor did he offer to support her or make any effort to show her that he was willing to work. However, there was no finding that during that period he was able to get work, or that he was able to support her. The period in question was September, 1931, to August, 1932. We take judicial notice that at that time the depression was at its depth. There is a finding that he sent her clothes to her. We cannot speculate concerning that bare fact, for the reason why he sent them is not stated. Furthermore, if he was out of work and unable to support her, he was not obliged to ask her to return, in view of her statement that she would not come back unless and until he was able to make a home for her. The conduct of the husband which caused her to leave was, then, not

a case of intentional, grievous misconduct, as though acts of cruelty had caused the leaving.

These being the circumstances, the court doubtless relied on *Bennett* v. *Bennett,* 43 Conn. 313. We said (p. 318): "If as a consequence she is compelled to support herself by her own efforts, or to rely temporarily upon the assistance of relatives or friends, and the parties are thereby forced into a state of separation, there remaining a desire and an intent on the part of both to resume cohabitation whenever circumstances will permit, such separation is not desertion in the eye of the law." In *Campbell* v. *Campbell,* 110 Conn. 277, 279, 147 Atl. 800, after citing the *Bennett* case, we said: "So the conduct of the husband which results in the separation, while reasonably justifying such a course on her part, may not be such that 'the public and personal objects of matrimony have been destroyed beyond rehabilitation', which is the foundation of a divorce on the ground of intolerable cruelty. *McEvoy* v. *McEvoy,* 99 Conn. 427, 432, 122 Atl. 100." We said also (p. 280): ". . . nor can she defend against a charge of desertion, whatever be her reasons for leaving, if her absenting herself be accompanied by an intent finally to sever the marriage relationship in fact, so as to amount to an extra legal divorcement." We doubt that this can be defended as a general principle of law; it must be considered in the light of the facts of that particular case. It is also applicable to the present situation. If a wife leaves her husband with the intent never to return to him and that intent persists for the requisite time, she cannot hide behind the fact that she was justified in leaving him because he was not able to support her in the home and that that incapacity continued during that period. The true situation here is that the justification would protect her in living apart as long as the

situation continued, but such justification does not reach to the situation where the wife intends never to return. The line denoting justification is terminable by the ending of the conditions on which it rests.

The defendant claims that the finding shows that her husband consented to the final separation, because it was his conduct that caused her to leave. We do not so read the finding. As we have already pointed out, there was no act of intentional cruelty on this plaintiff's part. Prior to the second leaving, he had agreed to go to Georgia with her, but the defendant changed her mind and left him. It is not found that he had changed his mind. He was not bound to accompany her against her will or to follow her. Madden, Domestic Relations, p. 285. After she had gone, had established her home in Georgia and had decided not to return to him, there was no opportunity for him to consent or dissent from her desertion. See *Smith* v. *Smith*, 129 Conn. 704, 707, 30 Atl. (2d) 916.

There is nothing in the finding of facts to establish desertion by the husband. In the *Campbell* case, supra, in commenting on *Bennett* v. *Bennett*, supra, where the facts were somewhat similar to those of the present case, we said (p. 279): "Yet such a failure to furnish support could hardly constitute a ground upon which the wife could claim a divorce." In the absence of a finding of desertion by the husband, the discussion of the effect of such a desertion in the conclusion and memorandum of decision only served to confuse the issue, and it should have been omitted. The question is not before us upon this record.

There is no error.

In this opinion MALTBIE, C. J., JENNINGS and DICKENSON, Js., concurred; BROWN, J., dissented.